UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MITCHELL PAUL COOK | CIVIL ACTION NO. 16-300 |
| Plaintiff | |
| VERSUS | JUDGE: |
| LOUISIANA WORKFORCE, L.L.C., JOHNNY SMITH, Warden of Phelps Correctional Center, C. DAVID TURNER, Warden of Elayn Hunt Correctional Center, SANDY McCAIN, Warden of B. B. Rayburn Correctional Center, JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity, and LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS | MAG JUDGE: |
| Defendants | JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, MITCHELL PAUL COOK, a person of the full age of majority domiciled in the State of Louisiana, by and through his attorneys of record, and files this Complaint against the above-named Defendants, and in support thereof would show unto this Honorable Court the following:

PARTIES

1. Plaintiff, MITCHELL PAUL COOK, is a major domiciled and residing in the State of Louisiana. The plaintiff has serious medical needs that have gone untreated, under-treated, or mistreated by Defendants. The plaintiff has suffered serious harm due to Defendants' deliberate indifference and their grossly deficient policies and practices, including unnecessary pain and suffering, mental anguish, exacerbation of his serious medical condition, and blindness in his right eye.

2. Defendant, LOUISIANA WORKFORCE, L.L.C., is a Louisiana Limited Liability Company, authorized to do and doing business in the State of Louisiana, which company is domiciled in New Roads, Louisiana 70760. At all times pertinent herein, Louisiana Workforce, L.L.C. ran, operated and administered the Transitional Work Program at Phelps Correctional Center near DeQuincy, Louisiana, under the purview and direction of the Louisiana Department of Corrections.

3. Defendant, JOHNNY SMITH, at all pertinent times was the Warden of Phelps Correctional Center. In this official capacity, he exercises operational control over Phelps Correctional Center by making staffing, budget, and administrative decisions. In this capacity, he supervises all the operations at Phelps dealing with the personnel of the prison, from prison officers, prison doctors and all others. By law, he is responsible for protecting the constitutional rights of all persons held in Phelps' custody. At all relevant times, Smith was acting under color of law and as the agent and official representative of DOC. He and/or his successor can be served at 14925 A-27, DeQuincy, Louisiana 70633.

4. Defendant, C. DAVID TURNER, at all pertinent times was the Warden of Elayn Hunt

Correctional Center ("Hunt").  In this official capacity, he exercises operational control over Elayn Hunt Correctional Center by making staffing, budget, and administrative decisions.  In this capacity, he supervises all the operations at Hunt dealing with the personnel of the prison, from prison officers, prison doctors and all others.  By law, he is responsible for protecting the constitutional rights of all persons held in Hunt's custody.  At all relevant times, Turner was acting under color of law and as the agent and official representative of DOC.  He and/or his successor can be served at 6925 Highway 74, St. Gabriel, Louisiana 70776.

5. Defendant, SANDY MCCAIN, at all pertinent times was the Warden of B.B. Rayburn Correctional Center.  In this official capacity, he exercises operational control over Rayburn Correctional Center by making staffing, budget, and administrative decisions.  In this capacity, he supervises all the operations at Rayburn dealing with the personnel of the prison, from prison officers, prison doctors and all others.  By law, he is responsible for protecting the constitutional rights of all persons held in Rayburn's custody.  At all relevant times, McCain was acting under color of law and as the agent and official representative of DOC.  He can be served at 27268 Highway 21, Angie, Louisiana 70426.

6. Defendant, JAMES M. LEBLANC, is the Secretary of Louisiana's Department of Public Safety and Corrections ("DOC").  In his capacity as Secretary, he is responsible for the functioning and control of all programs within the Department.  He formulates rules and regulations and determines policy regarding management, personnel, and total operations.  He leads and supports central office and field unit staffs, which are charged with carrying out the work of the agency.  By law, he is responsible for protecting the constitutional rights of all persons held in the DOC's custody.  At all relevant times, LeBlanc was acting under color of law and as the agent and official representative of DOC.  He can be served at 504 Mayflower Street,

Baton Rouge, LA 70802.

7.  Defendant DOC, The Louisiana Department of Public Safety and Corrections, is the state prison system, a division of the State of Louisiana.  It is charged with overseeing the custody and care of offenders in Louisiana.  Louisiana Revised Statute 15:1111 authorizes the DOC to establish and administer Transitional Work Programs.  At all relevant times, the DOC established and administered the Transitional Work Program at Phelps Correctional Center.  It operated Elayn Hunt Correctional Center and B.B. Rayburn Correctional Center, both public prison facilities with programs and services.  The DOC is the recipient of federal funds.  The DOC can be served at 504 Mayflower Street, Baton Rouge, Louisiana 70802.

## JURISDICTION AND VENUE

8.  This action arises under the Constitution of the United States of America and is brought pursuant to 42 U.S.C. § 1983 and § 1988, and particularly the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of Louisiana.  This court has original jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights) and supplemental jurisdiction over related Louisiana state law claims under 28 U.S.C. § 1367.

9.  Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because all the events or omissions giving rise to these claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

10.  Beginning on a date uncertain, Plaintiff, MITCHELL PAUL COOK was sentenced to serve time under the control of the Louisiana Department of Corrections (DOC), the entity responsible for the custody and care of adult offenders across Louisiana.

11.  During the course of his incarceration and while housed at the Phelps Correctional

Center near DeQuincy, Louisiana, MITCHELL PAUL COOK participated in a work release program administered and run by LOUISIANA WORKFORCE, L.L.C., under the purview and direction of the Louisiana Department of Corrections.

12. While participating in the aforementioned work release program, Mitchell Paul Cook was employed by South East Personnel Leasing, Inc., and he was sent to work as a hopper on a garbage truck in or near Lake Charles, Louisiana.

13. In conjunction with his job in the work release program owned, operated, administrated, or otherwise run by LOUISIANA WORKFORCE, L.L.C. and/or the Louisiana Department of Corrections, on or about Monday, May 11, 2015, inmate Mitchell Paul Cook was injured in a work-related accident at which time Cook suffered, among other injuries, a severe blow to his right eye, resulting in a detached retina.

14. Although Mitchell Paul Cook was provided with initial diagnostic medical attention immediately following the incident, on more than one occasion the defendants, through their representatives, agents, and employees, failed to follow through with and obtain for the plaintiff the recommended and necessary medical attention, including but not limited to URGENT SURGERY, as indicated by instructions of the initial medical providers.

15. Specifically, among other things, although urgent surgery was scheduled to take place on May 27, 2015, within only a few days of the accident in question, on information and belief, agents, representatives and/or employees of LOUISIANA WORKFORCE, L.L.C. and/or Phelps Correctional Center's Warden JOHNNY SMITH and/or DOC cancelled that surgery and transferred Mitchell Paul Cook to Elayn Hunt Correctional Center the very day before his scheduled eye surgery.

16. Thereafter, although surgery was again scheduled to take place, Warden C. DAVID

TURNER, his employees, representatives, agents or medical personnel at Hunt again cancelled what had been described as URGENT SURGERY. As a result, the plaintiff's necessary, recommended and URGENT SURGERY never took place as needed and as scheduled while he was at Hunt.

17. Thereafter, on or about August 10, 2015 Mitchell Cook was transferred to Rayburn Correctional Center under the custody of Warden SANDY MCCAIN, his employees, representatives, agents or medical personnel, where Cook remained for approximately seven months until he was finally sent for what had once been URGENT SURGERY.

18. At a minimum, all of the agents, representatives and/or employees of LOUISIANA WORKFORCE, L.L.C., JOHNNY SMITH, Warden of Phelps Correctional Center, in his official capacity, C. DAVID TURNER, Warden of Elayn Hunt Correctional Center, in his official capacity, SANDY McCAIN, Warden of B. B. Rayburn Correctional Center, in his official capacity, JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity, and/or DOC knew and/or should have known that the surgery had been designated as URGENT and that cancellation of the urgent surgery on plaintiff's right eye, as well as his subsequent transfers to Hunt Correctional Center and Rayburn Correctional Center, respectively, would be highly detrimental to Mitchell Paul Cook. Nevertheless, these defendants, through their agents, representatives and/or employees, acted unreasonably, with malice, with deliberate indifference and/or with gross negligence by refusing and/or failing to provide the plaintiff with the stated immediate, necessary, reasonable, timely, appropriate and even scheduled URGENT SURGERY medical care.

19. Phelps Correctional Center ("Phelps")is a DOC transitional work program facility which houses non-violent offenders. At all pertinent times JOHNNY SMITH was the Warden

of Phelps Correctional Center.  In this capacity, he exercised operational control over Phelps Correctional Center by making staffing, budget, and administrative decisions.  In this capacity, he supervised all the operations at Phelps dealing with the personnel of defendant Louisiana Workforce, L.L.C., and with the personnel of the work program facility, from prison officers, prison doctors and all others.  By law, he is and was responsible for protecting the constitutional rights of Mitchell Paul Cook while he is held in Phelps' custody.  He has condoned policies and practices that are medically and constitutionally deficient at Phelps.  At all pertinent times, Johnny Smith failed to fulfill his responsibilities at Warden at Phelps.  At all relevant times, Smith was acting under color of law and as the agent and official representative of DOC.

20. Elayn Hunt Correctional Center is a multi-security-level Louisiana Department of Public Safety and Corrections institution for adult men.  C. DAVID TURNER, at all pertinent times was the Warden of Elayn Hunt Correctional Center ("Hunt").  In this capacity, he exercised operational control over Elayn Hunt Correctional Center by making staffing, budget, and administrative decisions.  In this capacity, he supervised all the operations at Hunt dealing with the personnel of the prison, from prison officers, prison doctors and all others.  By law, he was responsible for protecting the constitutional rights of Mitchell Paul Cook while he was held in Hunt's custody.  He has condoned policies and practices that are medically and constitutionally deficient at Hunt.  At all pertinent times, C. David Turner failed to fulfill his responsibilities at Warden at Hunt.  At all relevant times, Turner was acting under color of law and as the agent and official representative of DOC.

21. Rayburn Correctional Center is a correctional institution in the state prison system in Louisiana.   SANDY MCCAIN, at all pertinent times was the Warden of Rayburn Correctional Center ("Rayburn").  In this capacity, he exercised operational control over Rayburn Correctional

Center by making staffing, budget, and administrative decisions. In this capacity, he supervised all the operations at Rayburn dealing with the personnel of the prison, from prison officers, prison doctors and all others. By law, he is and was responsible for protecting the constitutional rights of Mitchell Paul Cook while he is held in Rayburn's custody. He has condoned policies and practices that are medically and constitutionally deficient at Rayburn. At all pertinent times, Sandy McCain failed to fulfill his responsibilities at Warden at Rayburn. At all relevant times, McCain was acting under color of law and as the agent and official representative of DOC.

22. The medical services DOC provides to prisoners at Phelps, Hunt and Rayburn consist of both on-site treatment by DOC personnel and off-site treatment by local hospitals and specialists. Neither Phelps, Hunt nor Rayburn Correctional Centers have the capacity to perform most high-level and specialty care, including surgery. For such services, defendants must send prisoners to off-site facilities.

23. Upon information and belief, while he was at Phelps Correctional Center, before and after his transfer to Hunt Correctional, and before and after his subsequent transfer to Rayburn Correctional, at all times Mitchell Paul Cook exhibited obvious signs and symptoms consistent with a serious eye injury.

24. The defendants fully control all medical care available to prisoners. The defendants were fully aware of Mitchell Paul Cook's urgent medical needs, including but not limited to, the recommended and scheduled urgent surgery to his right eye, resulting from the May 11, 2015 injury. The defendants observed his deteriorated physical condition. Nevertheless, based on their unconstitutional policies and practices of failing to provide adequate medical care to their prisoners, the defendants' deliberate indifference to the urgent medical needs of Mitchell Paul Cook subjected him to a substantial risk of serious harm, unnecessary suffering, clinical

deterioration, and resulted in blindness in his right eye.

25. It was not until March 10, 2016, nearly ten (10) months to the day after the date of the severe injury to his right eye, that inmate Mitchell Paul Cook was finally transported from Rayburn Correctional Center to University Medical Center in New Orleans, Louisiana, where the surgery on his right eye was finally done. Unfortunately, by that time the surgery was no longer URGENT. The damage was already done. Because of the defendants' failure to provide timely access to urgent health care and their deliberate indifference to his medical needs, Mitchell Paul Cook now has permanent loss of vision in his right eye.

26. The defendants' refusal to send Mitchell Paul Cook for urgent surgery on his right eye for the extended period of 10 months illustrates their deliberate indifference and willful refusal to provide medically necessary care to their prisoner, despite knowing that failure to do so would cause continuing and worsening pain and suffering.

27. Plaintiff complained incessantly about the cancellation of the surgeries, as well as the undue 10 month delay in obtaining any surgery whatsoever. The plaintiff also utilized the Administrative Remedy Procedure (ARP) grievance process, as required of inmates by the Department of Corrections, to bring his concerns to the attention of the various prison officials and the DOC. Mr. Cook took the necessary steps under that procedure by complaining formally about the deficient and/or lack of timely and reasonable medical care which has resulted in permanent blindness in his right eye.

28. As a result of the aforementioned events, inmate MITCHELL PAUL COOK has suffered emotional and physical damages for which he is entitled to be reimbursed.

## FIRST CAUSE OF ACTION

### 42 U.S.C. §1983

29. Mitchell Cook is a citizen of the United States, and all of the defendants are persons for purposes of 42 U.S.C. §1983.

30. 42 U.S.C. §1983 provides, in part, that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

31. Mitchell Paul Cook has a clearly established right under the Eighth and Fourteenth Amendments to the United States Constitution to be free from deliberate indifference to his serious medical needs while incarcerated.

32. By their policies and practices described herein, Defendants have subjected Mitchell Paul Cook to a substantial risk of serious harm and to serious injury from inadequate medical care.  These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of the plaintiff's deprivation of rights secured by the United States Constitution under the Eighth Amendment.

33. The Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

34. The defendants are not entitled to qualified immunity because their actions violated Mitchell Cook's clearly established rights to reasonable, adequate and timely medical care.

35. By denying Mitchell Paul Cook medical care in deliberate indifference to his serious

and immediate medical needs, defendants denied his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and under the color of state law. Accordingly, they are answerable for damages and attorney's fees under 42 U.S.C. §1983 and §1988.

36. As a result of the actions described above, Defendants, while acting under color of law, to wit: under color of statutes, ordinances, regulations, customs and laws of the State of Louisiana and the United States of America, deprived plaintiff of clearly established and well-settled constitutional rights, including but not limited to:

   a. Right to the full and equal benefit of all laws and proceedings for the security of persons and property and equal rights under the law;

   b. Freedom from deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States of America and the Constitution of Louisiana;

   c. Freedom from intimidation, harassment, and threats of officials acting under color of law;

   d. Freedom from the negligent and deliberately indifferent treatment of officials acting under color of law;

   e. Right to due process of law;

   f. Freedom from cruel, sadistic, indifferent and humiliating treatment by prison officials;

   f. Freedom from cruel and unusual punishment;

   g. Right to equal protection and protection from abuse while in custody;

   h. Right to receive appropriate medical treatment while in custody.

37. The Defendants, in their official capacities, are further liable to the plaintiff under 42

U.S.C. §1983 because of their policies, practices, patterns and customs of failing to provide adequate and timely medical attention to inmate Mitchell Paul Cook.  These policies, practices, patterns and customs resulted in deliberate indifference to Mitchell Cook's serious and immediate medical needs in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and was a driving force behind his suffering, injury and the constitutional violation.  Accordingly, the defendants are further answerable to Mitchell Cook for damages and attorney's fees under 42 U.S.C. §1983 and §1988 for, among other things:

  a) Failure to act reasonably and timely to rectify the plaintiff's serious medical situation when they knew or should have known that he needed immediate medical attention, care and services;

  b) Breach of duty to screen, hire and/or supervise competent medical care providers at the prison;

  c) Breach of duty to provide reasonable and timely medical care for prisoners;

  d)  Breach of the standard of care required of the medical care providers;

38.  The defendants' actions and omissions violated Mitchell Cook's constitutional rights and proximately caused his physical pain, scarring,  facial disfigurement and emotional suffering.

39.  The defendants acted with willful disregard of and deliberate indifference to Mitchell Paul Cook's rights, and their conduct toward him was wanton, reckless, outrageous and deliberately indifferent.

## SECOND CAUSE OF ACTION

### Failure to Train and Supervise

40.  Defendants are further liable to the plaintiff under 42 U.S.C. §1983 for their deliberately indifferent policies, practices, habits, customs and widespread usages with respect to

the serious medical needs of inmates, including Mitchell Paul Cook, and for their deliberately indifferent failures in training and supervising their employees.

41. Johnny Smith, in his capacity as Warden of Phelps Correctional Center, C. David Turner, in his capacity as Warden of Elayn Hunt Correctional Center, Sandy McCain, in his capacity as Warden of Rayburn Correctional Center, James M. LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity, and the DOC, have tolerated patterns and practices of intentional actions and inactions, unjustified and unreasonable misconduct and/or have acted with a deliberate indifference in a pattern so widespread that it may be considered the unofficial custom or policy of said defendants to engage in the misconduct in question.  By their complained of policies and patterns of intentional actions and inactions, de facto policies, customs, habits, and usages, the defendants and their employees acted in bad faith and with deliberate indifference to the obvious serious medical needs of the prison inmates, including Mitchell Paul Cook.

42.  Defendants knew that potentially serious consequences could be, and likely would be, suffered by inmate Mitchell Paul Cook as a result of the defendants' challenged policies and practices and by their failures to properly train and supervise jail personnel, supervise and timely seek medical care, or develop adequate policies regarding medical care.

43.  All defendants and/or their employees had knowledge of the wrongs and of the pattern of misconduct alleged and had the power to prevent the commission of such misconduct and with deliberate indifference failed or refused to do so when, by reasonable diligence, they could have prevented said acts.

44.  Although the actions of Defendants were improper and deliberately indifferent, upon information and belief their officer(s), agents, employees or representatives have not been

disciplined or otherwise dealt with appropriately. As a result of this inaction, other similarly situated officers are encouraged to believe that such unconstitutional conduct would be permitted by defendants.

45. The pervasive pattern of unconstitutional conduct and policies constituted actual and/or constructive knowledge of the conduct on the part of policymakers, whose deliberate indifference to the unconstitutional practices is evidenced by a failure to correct the situation once the need for true protection, and adequate training and supervision became obvious. Defendants either participated, actively or passively, in the aforementioned event, or failed to protect and/or come to the aid of Mitchell Paul Cook and/or attempted to conceal the true sequence of events, without probable cause or authority of law. Defendants had knowledge of the wrongs and of the misconduct alleged and had the power to prevent the commission of such misconduct and negligently failed or refused to do so when, by reasonable diligence, they could have prevented said acts.

46. As a direct and proximate result of the aforesaid acts, omissions, systematic flaws, policies and customs of these Defendants, the Louisiana Workforce, L.L.C., Johnny Smith, Warden of Phelps Correctional Center, C. David Turner, Warden of Elayn Hunt Correctional Center, Sandy McCain, Warden of B.B. Rayburn Correctional Center, JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, in his official capacity, and the LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS engaged in the aforesaid misconduct which caused Plaintiff to suffer the denial of rights guaranteed to him under the Constitutions of Louisiana and the United States of America, and past, present and future physical, mental and emotional anguish and distress, facial disfigurement and other damages to be shown at the trial of this matter.

## THIRD CAUSE OF ACTION

### State Law Claims

47. The actions and omissions of the defendants also constitute negligent or intentional tortious acts or omissions for which they are answerable under Louisiana Civil Code Articles 2315 and 2316.

48. The actions and omissions of the defendants also constitute negligent or intentional tortious acts concerning Mitchell Paul Cook's deficient medical care, for which Defendants are answerable under Louisiana Civil Code Articles 2315 and 2316.

49. Defendants, Johnny Smith, in his official capacity as Warden of Phelps Correctional Center, C. David Turner, in his official capacity as Warden of Elayn Hunt Correctional Center, and Sandy McCain, in his official capacity as Warden of Rayburn Correctional Center, are vicariously liable for all these actions under the doctrine of *respondeat superior* and Louisiana Civil Code Article 2320.

50. All defendants had a duty to provide reasonable and timely medical care and treatment to prison inmates, including Mitchell Paul Cook, and to exercise reasonable care in the training and supervision of their employees.

51. The acts and/or omissions of Defendants were such as to amount to gross negligence so as to entitle Plaintiff to all applicable damages, whether punitive or actual.

52. Defendants breached these duties with respect to Mitchell Paul Cook, and as a proximate result, he suffered compensable injuries, including among others, physical, emotional and mental damages, facial scarring and disfigurement, attributable to the intentional or negligent actions and or inactions of Defendants taken in the course and scope of their official duties. The actions of the defendants constitute negligent or intentional tortious acts for which they are

answerable under Louisiana Civil Code Articles 2315 and 2316.

53. As a direct and proximate result of the aforesaid negligence, Plaintiff suffered the denial of rights guaranteed to him under the Constitutions of Louisiana and the United States of America, and past, present and future physical, mental and emotional anguish and distress, facial disfigurement and other damages to be shown at the trial of this matter.

54. Plaintiff is entitled to and demands a trial by jury.

WHEREFORE, premises considered, Plaintiff, MITCHELL PAUL COOK, demands judgment of and from Defendants, in an amount reasonable under the circumstances, together with all costs of court, expenses, interest and attorneys' fees allowed by 42 U.S.C. § 1983, and 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and all other applicable federal and state statutes.

    Respectfully submitted,

    STEPHENSON, CHAVARRI & LAMBERT, L.L.C.

    s/ Catherine I. Chavarri
    CATHERINE I. CHAVARRI (#20141)
        chavarrijd@smclattorneys.com
    MARIA I. O'BYRNE STEPHENSON (#12448)
        miosjd@smclattorneys.com
    KATHLEEN D. LAMBERT (#19665)
        katlambert@smclattorneys.com
    400 Poydras Street, Suite 1990
    New Orleans, LA 70130
    (504)523-6496 tel
    (504)525-2846 fax
    Attorneys for Plaintiff, Mitchell Paul Cook